**In re FASANO/HARRISS PIE COMPANY, Debtor.**

**Richard REMES, Plaintiff-Appellee, Cross-Appellant,**

v.

**ACME CARTON CORPORATION, Defendant-Appellant, Cross-Appellee.**

Bankruptcy No. 87–0406690.

United States District Court, W.D. Michigan.

Feb. 11, 1987.

Sullivan & Leavitt, P.C., by Martin J. Leavitt, Karen L. Faber, Northville, Mich., for plaintiff-appellee, cross-appellant.

Stanley, Davidoff, & Gray, P.C., by Robert E.L. Wright, Kalamazoo, Mich. for defendant-appellant, cross-appellee.

## OPINION

ENSLEN, District Judge.

Plaintiff-Appellee Fasano/Harriss Pie Company (Fasano/Harriss), through its

Trustee, Richard C. Remes (Trustee), brought suit on February 2, 1983 to recover certain alleged preferential transfers made by Fasano/Harriss to Acme within ninety (90) days of the filing of its bankruptcy petition of May 10, 1982. Following a one-day trial on July 26, 1986, the United States Bankruptcy Court of the Western District of Michigan granted in part and denied in part plaintiff's request to recover portions of the preferential transfers at issue. Defendant-appellant Acme Carton Corporation (Acme) brings this appeal from the bankruptcy court's October 17, 1984 Order granting the award, and the Trustee has cross-appealed solely as to that portion of the preferential transfer as to which it was denied recovery.

Originally, the parties agreed to appeal directly to the Sixth Circuit Court of Appeals pursuant to former 28 U.S.C. § 1292(b). However, following the Bankruptcy and Federal Judgeship Act of 1984, the right of direct appeal was lost, and consequently, the matter was transferred to this Court by an order of the Court of Appeals entered August 8, 1985. Since all briefs had already been filed with the Sixth Circuit and the matter was ready for decision at the time it was transferred, the Court has used those previously filed "appellate" briefs in making its decision.

### Facts

The defendant supplied paperboard cartons to the debtor, Fasano/Harriss Pie Company in late 1981 and early 1982. Edmond Walsh, the president and sole shareholder of Acme, testified at a hearing held on this matter on July 26, 1984, that the receivables on Fasano/Harriss's account had grown to $150,000—a figure Acme's bank found unacceptably high. As a consequence, the bank warned Acme that it would not be able to borrow against the receivables unless they were reduced or unless they were maintained at $150,000.

As a direct consequence of the bank's ultimatum, Mr. Walsh initiated a series of meetings with Mr. Franklin Lamb, senior vice-president of Fasano/Harriss. Mr. Walsh demanded that he receive payment which would approximate the value of the merchandise he was about to ship before he would actually ship it. Thereafter, the debtor, Fasano/Harriss, issued three (good) checks to Acme in exchange for the merchandise. The trial of the bankruptcy proceeding concerned the entitlement to portions of only two checks transferred by Fasano/Harriss to Acme in exchange for the new merchandise.

As to the first check, check # 16138 dated February 4, 1982 (check # 1), the Trustee gave credit for those debts which in his judgment were incurred within 45 days of the date that the transfer was made and in the ordinary course of the debtor's business under 11 U.S.C. § 547(c)(2) and sought to recover as a balance of the preferential transfer only $8,393.53 of the face value of the check ($25,199.47). The Bankruptcy Court found that while the $8,393.53 was a preferential transfer, it was *unavoidable* under 11 U.S.C. § 547(c)(4). (Section 547 of the Bankruptcy Code is set forth in full in the Appendix attached to this opinion.

Check # 16231 in the total amount of $22,107.91 was delivered on February 12, 1982, but was dishonored by the bank. This check was soon replaced by check # 3777 dated March 2, 1982 (check # 2). The court granted judgment to the Trustee in the amount of $21,759.44. While the total amount of check # 2 was $22,107.91, the court again offset the total amount of the check by the amount for which the trustee gave credit under § 547(c)(2), and then found that the amount of $21,759.44 was a preferential transfer which *was* avoidable.

A third check, check # 3870 (check # 3), in the total amount of $3,349.07 was delivered on February 26, 1982 and was honored by the drawee bank on March 4, 1982. Prior to the trial, the Trustee *stipulated* that this transfer constituted a contemporaneous exchange within the meaning of 11 U.S.C. § 547(c)(1) and was therefore *not* avoidable.

It is important to note that the parties agreed that once each of these three checks were received, Acme would release the merchandise on February 5, 1982,; Febru-

ary 16, 1982; and March 5, 1982, respectively. *See In the Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 873 (Bky.W.D. Mich.1984).

### Discussion

Defendant Acme argues that the bankruptcy court was correct in its determination that the date of delivery of check # 1 controlled for the purposes of application of 11 U.S.C. § 547(c)(4) and that the portion sought to be recovered by the Trustee as a preference was exempted from recovery under § 547(c)(4). Defendant, however, argues that the lower court erred in holding that both the first as well as the second transfer were not contemporaneous transfers for new value under § 547(c)(1).

Defendant argues further with respect to the second transfer that since the original check was delivered on February 12, 1982 and was ultimately paid through a replacement check on March 3, 1982—within thirty days of the original delivery date—the February 12, 1982 date should control for purposes of both §§ 547(c)(1) and (c)(4). Further, defendant argues that both transfers were *intended* by the parties to be a contemporaneous exchange for new value in the form of new credit to which the debtor was not entitled absent a payment on its outstanding account.

The first issue raised by Acme is whether both the debtor, Fasano/Harriss and the creditor, Acme, intended the two checks at issue to be payments for new paper cartons. The bankruptcy court found that one of the parties intended that the checks be applied to outstanding invoices for goods already received. Because this determination is a factual one, it is clear that it cannot be overturned unless this Court determines that it is clearly erroneous. *See Martin v. Bank of Germantown*, 761 F.2d 1163, 1165 (6th Cir.1985). "Under the clearly erroneous standard, as long as the judge's inferences are reasonable and supported by the evidence, they will not be overturned." *In re Southern Ind. Banking Corp.*, 809 F.2d 329, (6th Cir. January 22, 1987) (*citing Osborne v. Product Cred-*

*it Ass'n. of River Falls, Wis.*, 42 B.R. 988, 995 (Bankr.W.D.Wis.1984)).

Although the Trustee initially has the burden of proving the elements of a preferential transfer which are set forth in 11 U.S.C. § 547(b), in the case *sub judice* that inquiry is unnecessary since the parties have agreed that all the elements of the preferential transfer were established. However, it is the burden of the preferred creditor (Acme) to prove its entitlement to any of the exceptions to the Trustee's avoiding power as set forth in § 547(c). These exceptions are, in essence, affirmative defenses. *In re Arnett*, 731 F.2d 358 (6th Cir.1984); *In re Saco Local Development Corp.*, 25 B.R. 876 (Bankr.D.Me. 1982).

Under *Arnett*, the defendant must show, by a preponderance of the evidence, not only that the transfer was substantially contemporaneous, but also that it was "intended by the debtor *and* the creditor" to be a contemporaneous exchange for new value. *In re Arnett*, *supra*, at 362.

I find that the bankruptcy court's decision is not only *not* "clearly erroneous" but is supported by substantial evidence. Even assuming the issue were one of a mixed question of law and fact, and that this Court reviewed the bankruptcy's findings *de novo*, the Court's determination would still be the same. In finding that neither of the transfers fall within the exception provided by § 547(c)(1), and that the defendant has not met its burden, I find the following significant.

The bankruptcy court notes that "there was no understanding between the parties as to which invoices the checks in question were to be applied, indeed, Mr. Walsh and Mr. Lamb did not even discuss the issue. (trans. at 33, 58)." 43 B.R. at 877. While it is true that the invoices selected were to approximate the amount requested by Mr. Walsh, otherwise the debtor's normal accounting procedures were at play: the checks were to be applied against its oldest invoices (Tr. at 59, 65). Mr. Lamb's paramount concern was that its receivables account remain stable or that it be reduced. The practice of applying checks against the

oldest invoices is consistent with Mr. Lamb's concern. *Fasano/Harriss Pie Co.*, 43 B.R. at 877–78.

Finally, as plaintiff and the bankruptcy court observed, when the parties wanted to make a contemporaneous exchange and not a credit transaction, they knew how to do just that. In the third transaction, "the check amount and remittance advice correspond directly to the invoice for the goods delivered on March 5, 1982. Instead of applying its usual first in, first out accounting procedure, the debtor applied its check to the latest invoice received." *Fasano/Harriss Pie Co.*, 43 B.R. at 878.

■ The second issue is whether the defendant made any "subsequent advances" of unsecured new value to the debtor after the first and/or the second transfer. The district court is not bound by the bankruptcy court's conclusions of law, but is free to make an independent examination of a question of law or mixed question of law and fact. Therefore, in making its determination, the Court will undertake a *de novo* review. *See In the Matter of Lake in the Woods*, 10 B.R. 338 (E.D.Mich.1981).

■ Plaintiff argues that "subsequent value" arises only if the new value is given, or if the debtor has become obligated to pay, *after* the transfer from the debtor to the defendant. *In re Fulghum Construction Co.*, 706 F.2d 171, 173 (6th Cir.1983). Plaintiff declares that the crucial focus is whether the two shipments at issue were, in fact, "subsequent advances," and reasons that they were not since no new value was given after the transfers of February 16 and March 3, 1982. Rather, plaintiff argues that those transfer dates correspond to shipments of February 5 and February 12, 1982, respectively. (The bankruptcy court actually found that the *shipment* of merchandise under the *second* transaction occurred on February 16, 1982. See *Fasano/Harriss Pie Co.*, 43 B.R. at 877, n. 5. Plaintiff then argues that the bankruptcy court used the date on which Acme invoiced, and on which the debtor received the second shipment of boxes, February 16, 1982, as the date of the extension of "new value." Plaintiff, argues fur-

ther that the bankruptcy court should have used the date the goods were identified to the contract and the release authorized, February 12, 1982—or February 16, 1982, at the latest—in order to compute the date on which "new value" was given to the debtor. *See Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981) (other citations omitted). (Plaintiff's Brief at 22).

However, plaintiff's arguments mischaracterize what the bankruptcy court found. It specifically found that for purposes of § 547(c) the date of delivery for check # 1 was *February 5, 1982, not* February 16, 1982. (See *Fasano/Harriss Pie Co.*, 43 B.R. at 873.) The court also found that shortly thereafter, on February 5, 1982, defendant Acme released merchandise to the debtor Fasano/Harriss. The bankruptcy court reasoned that since "new value" includes "money's worth in goods" under § 547(a)(2), and since the amount of "new value" transferred exceeded the amount the trustee sought to avoid, the first transaction—including the disputed $8,393.52— was unavoidable in full. I agree.

In summary, plaintiff's "subsequent value" argument hinges on its proposal to use the date a check is honored by the drawee bank rather than the date a check is delivered as the date of transfer for purposes of the "subsequent advance rules." The plaintiff asks this Court to "resolve" or at least address the split of authorities between the bankruptcy courts in the eastern and western districts. In *In the Matter of Advance Glove Manufacturing Co.*, 25 B.R. 521 (Bankr.E.D.Mich.1982), the eastern district held that for the purposes of § 547(c) a transfer by check occurs when the check is honored by the drawee bank, not when it is delivered to the creditor. On the other hand, in *In the Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871 (Bankr.W.D.Mich.1984), the western district held that for the purposes of § 547(c) a transfer by check occurs when the check is delivered to the creditor, not when it is honored by the drawee bank.

I will not repeat the lower court's exegesis of the legislative history with respect to § 547(e)(2)—in part because of its com-

plexity and in part because I cannot improve upon its analysis—, but rather I will merely affirm its conclusion that it was not convinced that Congress intended § 547(e)(2) to apply beyond the sphere of secured transactions. The bankruptcy court went on to note that where the language of a statute and legislative history with respect to congressional intent are inconclusive, the Court must turn to policy considerations in making its determinations. It concluded that viewing the transfer of a check as the date of its delivery best implements the policy of §§ 547(c)(1), (c)(2), and (c)(4) which are "all designed to encourage creditors to deal with a failing business and to protect ordinary business transactions." *Fasano/Harriss Pie Co.*, 43 B.R. at 876. (The bankruptcy court also noted that the policy concerns of § 547(c) differ from those of § 547(b). Since § 547(b) seeks to avoid transactions to favored creditors, the holding that the date of transfer is the date of honor under § 547(b) is justified. *Id.* at 877 n. 2).

Plaintiff urges this Court to reject the holding in *Philadelphia Supply Co.*, 33 B.R. 734 (Bankr.E.D.Pa.1983) upon which the bankruptcy court relied. *Philadelphia Supply Co.* held that while the date that a check is honored by the drawee bank is the date of transfer for some purposes under § 547, the date of honor is inappropriate, for example, for purposes of § 547(c). Moreover, plaintiff argues strenuously that the time of transfer is—or should be—the same for all purposes under § 547(c); that is, the time of transfer should be the date when the check is honored by the drawee bank.

Further, although plaintiff's argument with respect to the possibility of "fraudulent agreements"—an argument drawn from *Advanced Glove, supra*, at 528–29—is not without appeal, I decline to accept its general sweep, nor can I accept plaintiff's specific characterization that the dealings between Mr. Walsh and Mr. Lamb were not "ordinary business transactions" at least within the "ordinary" legal meaning of those terms.

Finally, plaintiff suggests that a practical problem will necessarily emerge from the lower court's decision. Plaintiff argues that while in this case the dates of "delivery" were easy to ascertain because the checks were hand delivered, in most cases an exact delivery date would be difficult to fix given the dissonance between the pronouncement that "the check is in the mail" and the actual mailing of the check. One court has recently offered a practical solution to this most practical problem of procrastination by suggesting that for purposes of § 547(c)(4) transfer occurs when the check is *received* by the creditor, not when the check is mailed. *Re Olympic Foundry Co.*, 51 B.R. 428 (Bankr.W.D. Wash.1985).

For all the reasons cited above, I affirm the bankruptcy court's determination that since "new value" includes "money's worth in goods" under § 547(a)(2), and since the amount of "new value" transferred exceeded the amount the trustee sought to avoid, the first transaction—including the disputed $8,393.52 was unavoidable in full.

■ Plaintiff does not contest the bankruptcy court's holding that the trustee is entitled to recover $21,759.44 from the second check which was honored on March 2, 1982. What was crucial to its ruling that check # 2 was transferred for purposes of § 547(c) on March 2, 1982, however, and it is a point which plaintiff does not address, is that check # 2 was preceded by a check that was dishonored and that the legislative history to paragraph (c)(1) indicates that a dishonored check is to be treated differently than a check which is presented and honored in the ordinary course. The presumption that a check is a cash transaction is defeated where a check is dishonored. Put differently, nothing has been transferred by the [first] check to relate back to its delivery date. The bankruptcy court therefore concluded that "the date of delivery of a *replacement* check, if any, that is duly honored constitutes the date of transfer for purposes of § 547(c)." *Fasano/Harriss Pie Co.*, 43 B.R. at 876 (footnote omitted) (emphasis added).

Defendant, on the other hand, does contest the bankruptcy court's holding that the trustee is entitled to recover $21,759.44 from the second check which was honored on March 2, 1986. Defendant admits that the legislative history excluded a dishonored check from treatment as a cash equivalent but argues that where a replacement check is received and paid within thirty (30) days of receipt of the original check, it should be treated as a cash equivalent. Defendant further argues that while the court related the replacement check back to the original February 12, 1982 check in determining that the February 12 remittance advice controlled for the purposes of § 547(c)(2), that the replacement check should also relate back to the original check for purposes of determining the date of delivery under §§ 547(c)(1) and (c)(4). Defendant concludes that under its broad "relation back" theory, the transfers would be contemporaneous exchanges for new value and, as such, they would be unavoidable by the Trustee.

The Court finds defendant's argument unpersuasive. There was a dispute as to which invoices the debtor intended checks # 1 and # 2 to be applied. The lower court merely used the remittance advices in determining the debtor's intent with respect to paying pre-existing invoices which accompanied each check. The replacement check remittance advice did not list any invoices. However, the original check did have a remittance advice attached to it which actually listed various pre-existing invoices. The lower court then relied on the testimony of Mr. Lamb, who indicated that the debtor intended the original remittance advice to control as to which invoices the replacement check would be applied. *Fasano/Harriss Pie Co.*, 43 B.R. at 877 n. 7. I decline to extend that analysis so as to hold that the replacement check should also relate back to the original check for purposes of determining the date of delivery under §§ 547(c)(1) and (c)(4). I have previously indicated that the second exchange was not a contemporaneous exchange within the meaning of § 547(c)(1) and *a fortiori*, there has been no new value supplied by

the debtor subsequent to March 2, 1982, the date of transfer.

Accordingly, for all the above reasons I affirm the decision of the bankruptcy court that neither the transfer by check # 1 nor the transfer by check # 2 was a "contemporaneous exchange" within the meaning of 11 U.S.C. § 547(c)(1). I further affirm the bankruptcy court's holding that a transfer by ordinary check occurs on the date the check is delivered and not the date the check is honored by the drawee bank for purposes of 11 U.S.C. § 547(c). Finally, I affirm the bankruptcy court's decision awarding the sum of $21,759.44 to the Trustee and denying the Trustee's request for the sum of $8,393.52.

## APPENDIX

### SECTION 547 (11 U.S.C. § 547)

§ 547 Preferences.

(a) In this section—

(1) "inventory" means personal property leased or furnished, held for sale or lease, or to be furnished under a contract for service, raw materials, work in process, or materials used or consumed in a business, including farm products such as crops or livestock, held for sale or lease;

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation;

(3) "receivable" means right to payment, whether or not such right has been earned by performance; and

(4) a debt for a tax is incurred on the day when such tax is last payable, including any extension, without penalty.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this tile.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before 10 days after such security interest attaches;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) of a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interest for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; and

(B) the date on which new value was first given under the security agreement creating such security interest; or

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

(d) A trustee may avoid a transfer of property of the debtor transferred to secure reimbursement of a surety that furnished a

bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

## JUDGMENT ORDER

In accordance with the written opinion dated February 9, 1987;

IT IS HEREBY ORDERED that the Judgment Order of the Bankruptcy Court entered October 17, 1984, awarding the sum of $21,759.44 to the Trustee and denying the Trustee's request for the sum of $8,393.52, is AFFIRMED in full.