In re BELKNAP, INC., Debtor.

OFFICIAL UNSECURED CREDITORS'
COMMITTEE OF BELKNAP, INC.,
Plaintiff–Appellant,

v.

The SHALER CORPORATION,
Defendant–Appellee.

No. 89–6235.

United States Court of Appeals,
Sixth Circuit.

Argued June 7, 1990.

Decided July 25, 1990.

Ronald R. Peterson, Jay S. Geller (argued), Jenner & Block, Chicago, Ill., Jeremiah A. Lloyd, Gerald F. McDaniel, Lloyd & McDaniel, Louisville, Ky., for plaintiff-appellant.

Richard H. Casper, Foley & Lardner, Milwaukee, Wis., Helen Lucier (argued), Charles R. Keeton, Brown, Todd & Heyburn, Louisville, Ky., for defendant-appellee.

Before: MERRITT, Chief Judge; KRUPANSKY and MILBURN, Circuit Judges.

MERRITT, Chief Judge.

The preference problem in this case involving three checks issued by the bankrupt debtor requires an interpretation of section 547(b) of the 1978 Bankruptcy Act. That section provides that "the trustee may avoid any *transfer of an interest* of the debtor in property" made on or within 90 days of the filing of the bankruptcy petition. 11 U.S.C. § 547(b) (1988) (emphasis added).[1] The two main questions present-

---

1. The preference provision of section 547 states in pertinent part:

   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition....

   (c) The trustee may not avoid under this section a transfer—

   ....

   (2) to the extent that such transfer was—

   (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

   (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

   (C) made according to ordinary business terms.

   11 U.S.C. § 547 (1988).

   Two other subsections, § 547(e)(1)(B) and (e)(2)(A), have been relied on in some instances as a source of the meaning of "transfer" for purposes of section 547. Under § 547(e)(1)(B), a transfer "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B) (1988). Accordingly, it has been argued that since a judicial lien creditor can defeat the interest of the payee during the period between delivery and payment, the transfer is not perfected until the debtor's bank accepts the check. Under § 547(e)(2)(A), if a transfer is perfected within ten days of the time it became effective between the parties, the date of transfer relates back to the time the transfer became effective between the parties. 11 U.S.C. § 547(e)(2)(A). The legislative history, however, indicates that Congress did not intend for section (e) to apply to check transactions. Rather, Congress's purpose there was to reverse the overprotection given secured creditors under the new Act. H.R.Rep. No. 595, 95th Cong., 1st Sess. 19 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6139; Ferguson, *Does Payment By Check Constitute a Transfer Upon Delivery or Payment?*, 64 Am.Bankr. L.J. 93, 109–10 & accompanying notes (1990).

ed are: (1) Is a bankrupt debtor's check to be treated as a cash transaction at the time of its delivery to the creditor so that a check delivered more than 90 days before bankruptcy does not constitute a voidable preference even though the check is honored within the 90–day preference period? (2) If the date of delivery, rather than the date the check is honored, is the crucial date for purposes of determining a "transfer," when does delivery occur—on the date of mailing or on the date the creditor receives the check?

Viewing the matter as one governed by state law, the Bankruptcy Court below reasoned that the "transfer of an interest of the debtor in property" occurred only on the date of payment by the bank and avoided as preferences all three checks in question here. 96 B.R. 108. On appeal, how-

| Check | Due | Amount |
|---|---|---|
| 36749 | 7/31/85 | 1614.60 |
| 34525 | 7/31/85 | 1582.31 |
| 36983 | 7/31/85 | 1582.31 |

ever, District Judge Siler disagreed with the Bankruptcy Court, holding instead as a matter of federal law that the preference question turns on the date of delivery. We agree with Judge Siler, who followed the rule adhered to by all the Courts of Appeals that have discussed the issue under the 1978 Act. We also conclude that the date the creditor receives the check, rather than the date of mailing, constitutes the date of delivery and hence the date of "transfer" under section 547(b).

On June 18, 1985, the creditor, the Shaler Corporation, shipped engine oil products to the debtor, Belknap, Incorporated, and the debtor paid for the goods by check. The 90–day preference period began to run on September 5, 1985. The pertinent dates are as follows:

| Mailed | Received | Honored |
|---|---|---|
| 8/30 | 9/3 | 9/5 |
| 9/4 | 9/9 | 9/12 |
| 9/10 | 9/12 | 9/16 |

As the above dates show, the last check (number 36983), in the amount of $1582.31, was mailed, received, and honored within the 90–day preference period. Thus, because that check clearly qualifies as an avoidable preference, only two checks, numbers 36749 and 34525, rather than the three considered in the lower court proceedings, require a determination of the effective date of "transfer" within the meaning of section 547(b). There are three possible approaches for determining at what point a check transaction becomes a transfer. First, if a transfer occurs when the debtor places the check in the mail, then both checks (numbers 36749 and 34525), were transferred outside the 90–day preference period. Second, if a transfer occurs when the creditor actually receives the check from the debtor, then the first check (number 36749) would fall outside the preference period while the second check (number 34525) would fall inside the preference period. Finally, if a transfer occurs only when the debtor's bank honors the check, then both checks (numbers

36749 and 34525) were transferred inside the preference period.

### I.

What constitutes a "transfer of an interest of the debtor in property" within the meaning of section 547(b) of the 1978 Act is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States. The Supreme Court in analogous circumstances has so concluded. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 204, 65 S.Ct. 226, 232–33, 89 L.Ed. 173 (1944); *Prudence Realization Corp. v. Geist*, 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942). We recognize that in the absence of any controlling federal statute, the definition of "transfer" and its operation are controlled by state law. Although the 1978 Act does not delineate when a check becomes a transfer for purposes of section 547, the fact that Congress clarified its intent in enacting that

section of the Code makes it unnecessary to look to state law for guidance. The legislative history to section 547 states that

> payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2).

124 Cong.Rec. S17,414 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini); 124 Cong.Rec. H11,097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); *see* 2 Norton, *Bankruptcy Law & Practice* § 32.15 (1981).

*Collier* further reinforces our position that the preference question is a matter of federal law. According to *Collier*, "[t]he supremacy of state law is confined to determining what constitutes perfection of a transfer. The question of whether a transfer is preferential and avoidable by the trustee is governed by § 547 of the Code." 4 *Collier on Bankruptcy* ¶ 547.16, at 547–63 (L. King 15th ed. 1990). Any other approach, including the plaintiff's recommendation that "transfer" be defined not wholly as a matter of state law but "by reference to state law," would undermine the need for uniformity in the application of the preference section to checks and is inconsistent with the realities of day-to-day business transactions, both personal and commercial, where checks normally are considered present payments between parties. *See, e.g., O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984); U.C.C. § 3–104(2)(b) (1978) (a check is "a draft drawn on a bank and payable on demand."). This approach also draws support from section 547's underlying policy of affording some stability to struggling enterprises by attempting to relieve creditors' concerns that any payments received from the debtor could, depending on the vagaries of the check honoring process, later be avoided as preferences.[2]

## II.

The Courts of Appeals' opinions interpreting section 547 of the 1978 Act all have reached the conclusion that the delivery of a check is equivalent to a cash transaction if the check is not dishonored. *O'Neill*, 729 F.2d at 37 (delivery of check is date of transfer provided the check is presented for payment within 30 days and honored by debtor's bank); *In re Continental Commodities, Inc.*, 841 F.2d 527 (4th Cir.1988) (same); *Braniff Airways, Inc. v. Midwest Corp.*, 873 F.2d 805 (5th Cir.1989) (transfer occurs upon delivery of a check because "this construction is consistent with the legislative history ... the underlying purpose of § 547, and accepted commercial standards"); *In re White River Corp.*, 799 F.2d 631 (10th Cir.1986) (same); *In re Kenitra, Inc.*, 797 F.2d 790 (9th Cir.1986) (same), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987).

The Court of Appeals cases said to be inconsistent with this approach, *Nicholson v. First Inv. Co.*, 705 F.2d 410 (11th Cir. 1983) (transfer occurs when check is honored by debtor's bank); *Fitzpatrick v. Philco Fin. Corp.*, 491 F.2d 1288 (7th Cir. 1974) (same); *Klein v. Tabatchnick*, 610 F.2d 1043 (2nd Cir.1979) (same), all interpret section 60 of the Chandler Act, the language and legislative history of which assume a more complete reliance on state law definitions of the word "transfer." *See* Bankruptcy Act of 1898, ch. 541, § 60(b), 30 Stat. 544, 562 (repealed 1978); *McKenzie*, 323 U.S. at 365, 65 S.Ct. at 405. Obviously interpretations of the preference section of the old Bankruptcy Act do not control the interpretation of the new preference section in the new Act when the legislative history of the new Act, as discussed above, suggests that Congress intended that a "transfer" occur when the check is delivered.

## III.

■ The Bankruptcy Court held below, and the Creditors' Committee now argues,

---

**2.** This rule also removes from the control of banks, which often are creditors with an interest in set-off, the legal consequences of debtor-creditor check transactions. Otherwise, a rule that recognizes a "transfer" as occurring only upon the honoring of a check would permit creditor-banks to manipulate the honoring process to facilitate their own debt recovery to the detriment of other creditors.

that the date of delivery should only apply as the date of transfer for the exceptions to avoidance under subsection (c) of section 547 and should not apply to the rule of subsection (b). District Judge Siler properly rejected this view. There is no persuasive reason for giving the word "transfer" a different meaning under the two subparts of section 547. The policy of section 547(b) is to set aside transfers that potentially prefer selected creditors; section 547(c), in turn, defines groups of creditors who are excepted. To give the word "transfer" a different meaning in these complementary subparts seems inconsistent, unworkable, and confusing. *See* Ellis, *Preferential Payments by Check: At What Point Is Payment Made?*, 16 U.C.C. L.J. 46, 57 (1983) ("The application of two separate tests to such similar questions is illogical.").

Neither the general policy of equality of distribution applicable after the 90–day cutoff date nor the policy of encouraging uninterrupted trade before and after that date for certain groups of creditors excepted under subsection (c), necessarily demands a particular answer to the check transfer problem presented here. Given that the bankruptcy system must deal with thousands of debtors and millions of check transactions each year, the relative consistency, clarity, and simplicity of a particular rule is an affirmative value.[3] Also the reliance factor—the expectations of creditors and debtors that completed transactions will not be upset—is a value that should not be overlooked. Weighing these factors in the balance, we believe the District Judge was correct in rejecting the plaintiff's argument that different rules for check transfers should apply to subsections (b) and (c) of section 547. This conclusion applies with equal force to our discussion above concerning the legislative history to section 547. That the quoted history refers

specifically to subsections (c)(1) and (2) and fails to mention subsection (b) is more symptomatic of "troublesome" Committee Reports, *see* Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 761 (1985), than of Congress's intent to fashion different definitions of transfer under two complementary subsections.

In his seminal article on the purpose and operation of the law of preferences in bankruptcy, Professor Countryman, an advisor to the staffs of the Senate and House Judiciary Committees in the drafting of the 1978 Bankruptcy Act, reinforces the conclusion reached here that the transfer of a check under the preference section should be treated as a cash transaction:

> A check is "a draft drawn on a bank and payable upon demand." A check is not a credit instrument unless it is "postdated by even one day." A postdated check technically is not a check but a time draft because it is not payable until the stated date. Therefore, on a check not postdated, the drawer has not obtained a legal right to delay payment. In other words, no credit has been extended. And U.C.C. section 3–503(2)(a), to which the Committee Reports referred, provides for a thirty day period for presenting a check to the drawee bank to charge the drawer with his obligation under U.C.C. section 3–413 to pay the amount if the drawee dishonors the check. This thirty day period has nothing to do with whether the underlying transaction is a credit transaction.

*Id.* at 760–61 (footnotes omitted). Under this theory, the commercial expectation behind the transfer of a check is treated like the commercial expectations behind the transfer of a cashier's check or a certified check. When the debtor gives the check to the creditor it constitutes a "transfer of an

---

3. We reject the assertion of the Creditors' Committee that these same values of consistency, clarity, and simplicity demand that the date the bank honors a check should control. The Committee contends that their approach reduces proof problems by vesting a "neutral third party—the debtor's bank," Appellant's Brief at 16, with control of determining the effective date of transfer, rather than depend on the less reliable claims of creditors as to the date they received payment from their debtors. We see no reason why banks, whether in a creditor capacity or not, should be viewed presumptively as either more accurate or more forthright recordkeepers than are general creditors.

interest in the debtor's property" because the debtor then has no right to delay payment of the check and the payor does not make a new extension of credit to the drawer by accepting a check rather than cash. Rather, it is more like transferring money than making a loan for the period of time it takes for the check to clear. Professor Countryman's explanation reinforces the conclusion that payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored.

## IV.

In addition to determining that "transfer" of a check occurs upon delivery from debtor to creditor, we must also settle when "delivery" occurs, whether upon mailing or receipt of the check. This question has not been resolved by the Courts of Appeals. In fact, although the "delivery" standard adopted by the Courts of Appeals has been interpreted by some Bankruptcy and District Courts to mean actual delivery into the possession of the creditor, *see In re Amarex, Inc.*, 74 B.R. 378, 382 (Bankr. W.D.Okla.1987) (citing *In re White River Corp.*, 799 F.2d 631 (10th Cir.1986)), our research reveals no case in the Courts of Appeals that seriously considers when delivery occurs for purposes of a check transfer under the 1978 Act. *See Braniff Airways*, 873 F.2d at 808 (concluding without explanation that mailing date constituted delivery).

In the absence of authority from the Courts of Appeals, two conflicting rules have emerged in the federal bankruptcy and state courts. One rule identifies "delivery" as the moment the check is put in the mail. *See, e.g., In re Sider Ventures & Servs. Corp.*, 33 B.R. 708, 710 (Bankr.S.D. N.Y.1983) (defining "delivery" as "voluntary transfer of possession," which occurs when the check is mailed "at the instance of the payee."); *Brady on Bank Checks*

§ 5.7, at 5–12 to 14 (6th ed. 1987) (delivery occurs on mailing if "mailed by the drawer at the direction of the payee, or in response to his request," but, "where the check is mailed by the drawer at his own instance and not at the request of the payee, the title remains in the drawer during transmission" and vests in payee when he receives it).

The other rule, conversely, states that delivery occurs only when the payee obtains possession of the check. *See, e.g., In re Fasano/Harriss Pie Co.*, 71 B.R. 287, 291 (W.D.Mich.1987) ("transfer occurs when the check is received by the creditor, not when the check is mailed.") (citing *In re Olympic Foundry Co.*, 51 B.R. 428 (Bankr.W.D.Wash 1985)); *In re Amarex, Inc.*, 74 B.R. 378, 382 (Bankr.W.D.Okla. 1987) (same). In our view, this rule is more sensible not only because it avoids inquiries into whose idea it was, debtor or creditor, that payment be made by check, but also because it avoids "the dissonance between the pronouncement that 'the check is in the mail' and the actual mailing of the check." *In re Fasano*, 71 B.R. at 291. This rule also recognizes that a creditor is more likely to promptly post a debtor's payment upon receipt than to save the postmarked envelope for proof of the date that the debtor mailed the check.

## V.

We conclude that in the case of check transactions, with the exception of post-dated checks, transfer occurs upon delivery of the check from debtor to creditor, and that delivery occurs upon the creditor's actual receipt of the check. We also agree with the view of the First and Tenth Circuits that the check must be presented for payment within "the 30–day period deemed reasonable under the U.C.C." [4] and honored upon presentment in order for the delivery date to be considered the time of transfer.

---

**4.** U.C.C. § 3–503(2)(a) (1978) provides:
(2) A reasonable time for presentment is determined by the nature of the instrument, any usage of banking or trade and the facts of the particular case. In the case of an uncertified check which is drawn and payable within the United States and which is not a draft drawn

by a bank the following are presumed to be reasonable periods within which to present for payment or to initiate bank collection:
(a) with respect to the liability of the drawer, thirty days after date or issue whichever is later.

*In re White River*, 799 F.2d at 634; *O'Neill*, 729 F.2d at 38. Accordingly, the District Court's ruling that the check payments were not avoidable transfers within the meaning of section 547(b) is affirmed only with respect to check number 36749, which was delivered to the creditor outside the preference period. With respect to check numbers 34525 and 36983, which were delivered inside the 90–day preference period, the District Court's ruling is vacated and the case remanded to that court with instructions to address the applicability of the "ordinary course of business" exception to avoidable preferences listed in 11 U.S.C. § 547(c)(2) (1988).[5]

---

**5.** For a helpful discussion of the policies underlying, and the pitfalls in the application of these exceptions, see Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L. Rev. 713, 767–76 (1985).