### In re GLOBAL DISTRIBUTION NETWORK, INC., Debtor.

**GLOBAL DISTRIBUTION NETWORK, INC., Plaintiff–Appellee,**

**v.**

**STAR EXPANSION CO., et al., (Infasco Division/Ivaco), Defendants–Appellants.**

**Nos. 90 C 4069, 87 B 03274 and 88 A 0665.**

United States District Court, N.D. Illinois, E.D.

Dec. 18, 1990.

Timothy John O'Donovan, Charles N. Brusso & Associates, Chicago, Ill., for appellants.

John V. Del Gaudio, John V. Del Gaudio, Jr. and Associates, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before this court on the appellants' appeal from adverse orders of summary judgment entered by the Honorable Ronald S. Barliant of the Bankruptcy Court of the Northern District of Illinois, Eastern Division. For the reasons set out below, we affirm the decision of the bankruptcy court.

### Background

Pursuant to 11 U.S.C. Rule 8001 *et seq.*, this matter is before us on appeal from a final judgment by a bankruptcy judge. The district court may review questions of law *de novo*. 11 U.S.C. Rule 8013; *In the Matter of Supreme Plastics, Inc.*, 8 B.R. 730 (D.C.Ill.1980). We are asked to consider only one issue of law: for purposes of 11 U.S.C. § 547(b)(4)(A) of the Bankruptcy Code, should the transfer of a debtor's payment, by check, to a trade creditor for goods sold and delivered be deemed "made" when the check is honored by the drawee bank or when the check is received and negotiated by the creditor?

The background facts are these. On March 3, 1987, Global Distribution ("Glob-al") filed for Chapter 11 relief under the Bankruptcy Code. Global then commenced one adversary proceeding against INFAS-CO Division of IVACO, Inc. ("INFASCO") and another one against IFC (FASTENERS), Inc. ("IFC") to recover monies that it had paid to both INFASCO and IFC during the course of business. Global alleged that these payments were avoidable preferential transfers under 11 U.S.C. § 547.

On May 10, 1990, and June 18, 1990, the bankruptcy court entered summary judgment in favor of Global, the appellee here, and against both INFASCO and IFC, appellants here, in the amounts of $21,069.98 and $10,977.77, respectively. INFASCO argues that two of the checks it received from Global, totalling $9,248.60, were not preferential transfers. IFC argues that the entire sum it received from Global represented two payments that did not constitute preferential transfers.

The four Global checks at issue were dated October 27, 1986. On November 28, 1986, INFASCO and IFC deposited the checks in their business accounts in La Banque Toronto Dominion in Montreal, Canada. Global's bank honored all checks on December 3, 1986, but only after the checks had been processed through the United States clearinghouse bank, Chemical Bank in New York, pursuant to international banking regulations.

The bankruptcy court found that these checks fell within the avoidable preference net of § 547 because the checks were honored on December 3, but INFASCO and IFC argue on appeal that, under these circumstances, the date when the transfers were "made" should be the date of deposit, November 28, 1986. Under the appellants' theory the payments would have been made comfortably beyond the reach of the avoidable preference net.

### Discussion

The Bankruptcy Code, 11 U.S.C. § 547(b)(4)(A), provides that a debtor "may

avoid any transfer of an interest of the debtor in property ... made ... on or within 90 days before the date of the filing of the petition." In this case the bankruptcy court determined that the outer reach of the avoidable preference net is December 3, 1986. Therefore, any transfers deemed "made" between December 3, 1986 and March 3, 1987, constitute avoidable preferences.

INFASCO and IFC argue that the particular circumstances here counsel another result. In granting Global summary judgment, the bankruptcy court quoted its reasoning in a previous case involving Global wherein it drew an analogy to state law and determined that the honoring of a check constitutes the actual assignment of funds, not the issuance of the check. *In re Global Distrib. Network, Inc.,* 114 B.R. 157 (Bankr.N.D.Ill.1990) (citing *Global Distrib. Network v. Star Expansion Co.,* 103 B.R. 949, 952 (Bankr.N.D.Ill.1989), which in turn cites *Tri–State Bank v. Blue Ribbon Saddle Shop, Inc.,* 76 Ill.App.3d 445, 32 Ill.Dec. 230, 233, 395 N.E.2d 177, 180 (1st Dist.1979); *Leavitt v. Charles R. Hearns, Inc.,* 19 Ill.App.3d 980, 312 N.E.2d 806, 809 (1st Dist.1974); *In re Foreman,* 59 B.R. 145 (S.D.Ohio 1986)).

Indeed, the majority of courts would agree with this conclusion. *See Matter of Almarc Manufacturing, Inc.,* 52 B.R. 582, 583–84 (Bankr.N.D.Ill.1985) (and cases cited therein). The *Almarc* court noted with reference to the Uniform Commercial Code that the money in a checking account is not in fact transferred until such time as the check is cashed. *Id.* at 584 (citing U.C.C. § 3–409 (1983)).

In support of their argument for a departure from this transfer rule, the appellants urge us to adopt the reasoning of the bankruptcy court when considering the analogous issue under U.S.C. § 547(c)(4). *In re Almarc Mfg., Inc.,* 62 B.R. 684, 688–90 (Bankr.N.D.Ill.1986). Under § 547(c)(4), creditors are encouraged to extend unsecured credit to debtors and would be discouraged from doing so if they were obliged to wait for checks to be honored before shipping new goods; therefore, courts look to the date when the check was received for purposes of calculation under § 547(c)(4). *Id.* Under the avoidable preference provisions at issue here, however, the emphasis is on the disgorgement of funds causing *actual* depletion of the debtor's coffers, an event that does not occur until the check is *actually* honored and the debtor may no longer stop payment.

Certainly the appellants were disadvantaged here because they use a Canadian bank and are subject to the slight delay occasioned by international banking regulations. Here that slight delay turned out to be very costly. No doubt scores of creditors are caught in the avoidable preference net because of presentment delays that have come about through no fault of their own—by, for example, delay in the mails, a company policy, or some negligence outside of their control. Why, one might ask, a 90–day net and not an 95–day or a 45–day net? Certainly the number of days is fairly arbitrary, but that number is predictable to the extent that such an after-the-fact retrieval system can be predictable. Because we feel that there are good reasons to deem a transfer "made" when a transfer of funds is actually accomplished and because we feel that the method of computation should be uniform under § 547(b)(4)(A), we affirm the decision of the bankruptcy court.