**GLOBAL DISTRIBUTION NETWORK, INC., Plaintiff–Appellee,**

v.

**STAR EXPANSION CO., et al., Defendants–Appellants.**

Nos. 91–1151, 91–1152.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1991.

Decided Nov. 19, 1991.

John M. Galich (argued), Brusso & Associates, Chicago, Ill., for Star Expansion Co. and IFC (Fasteners), Inc.

John V. Del Gaudio, Jr. (argued), Chicago, Ill., for Global Distribution Network, Inc.

Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

When does a check create a "transfer" for purposes of 11 U.S.C. § 547(b)? This statute allows the estate of a debtor in bankruptcy to avoid transfers made during the 90 days before the filing of the petition. If the transfer occurs when the check is honored, then Global Distribution Network is entitled to recover about $20,000 from its creditors, who supplied goods on open account. If the transfer occurs at any earlier time, the creditors prevail. Bankruptcy Judge Barliant ruled that the transfer occurs on the bank's payment of the instrument, 114 B.R. 157 (Bankr.N.D.Ill.1990), and the district court affirmed, 133 B.R. 927 (N.D.Ill.). This conclusion accords with our holding under the 1898 Act, *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974), and the tenth circuit's view of the 1978 Code, *In re Antweil*, 931 F.2d 689 (1991), cert. granted under the name *Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 48, 116 L.Ed.2d 26 (1991). We conclude, however, that under the 1978 Code a transfer occurs on receipt of the check, provided the check is honored within 10 days.

Adversary proceedings in Global Distribution's bankruptcy sought to recover, as preferences, payments to several of its suppliers. Many payments concededly fell within the 90–day period. A few checks were right at the fringe. Some $20,000 in payments was made by checks dated October 27, 1986, and received by suppliers in Canada on November 28, 1986. (The record does not explain the gap.) The suppliers deposited the checks that day in Montreal. They were honored by Global Distribution's bank in the United States on December 3, 1986, three business days later. Global Distribution filed its petition in bankruptcy 90 days later, on March 3, 1987. Section 547(b)(4)(A) authorizes the recovery of transfers made "on or within 90 days before the date of the filing of the petition". (Other requirements of § 547(b) have been conceded for purposes of this case.) So if the transfer occurs when the check is honored, Global Distribution recov-

ers the money, to be shared ratably among its general creditors.

The 1978 Code supplies two definitions of "transfer", one general and one for purposes of § 547. The general definition appears in 11 U.S.C. § 101(54):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption; …

The specialized definition in § 547(e)(2) says that "[f]or the purposes of this section … a transfer is made"

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; …

This reference to "perfection" creates difficulties, for although security interests are "perfected" other transfers are not.

Five definitions of the date of "transfer" by check are possible. Transfer may occur:

- When the debtor tenders (mails or delivers) the check.
- When the creditor receives the check.
- When the creditor negotiates the check.
- When the debtor's bank honors the check.
- When the creditor receives the check, provided the bank honors the check within 10 days.

The bankruptcy and district judges in our case adopted the date-of-honor rule. *Antweil* is in accord. Cases support the other possibilities, too. *In re Kenitra, Inc.*, 797 F.2d 790, 791 (9th Cir.1986), holds that the transfer occurs "at the time the debtor gave the check to the creditor", provided the check is "presented to the bank within a reasonable time and honored by the bank." The ninth circuit uses the 10–day period of § 547(e)(2)(A) as the outer limit. *In re Wadsworth Building Components, Inc.*, 711 F.2d 122, 123 (1983). *In re Belk-*

*nap, Inc.*, 909 F.2d 879, 884 (6th Cir.1990), holds that the transfer occurs on delivery of the check but that "delivery occurs upon the creditor's actual receipt of the check". *Belknap* adds that the creditor must negotiate the check within 30 days, which § 3–503(2)(a) of the UCC defines as a reasonable time for presentment. The fourth circuit treats delivery as transfer, *In re Virginia Information Systems Corp.*, 932 F.2d 338 (4th Cir.1991), apparently without regard to the time of presentment. Decisions of district and bankruptcy courts line up behind all five of the main possibilities and some additional variants.

*Antweil* gives three reasons for its date-of-honor rule: ease of proof, conformity with the UCC (§ 3–409(1) of which provides that "the drawee is not liable on the instrument until he accepts it"), and the purposes of the Bankruptcy Code. *Antweil* overlooks a fourth concern: consistency with the text. "Transfer" is a defined term in the 1978 Code, and neither *Antweil* nor any of the other courts of appeals has discussed § 101(54). "Transfer" means "every mode, direct or indirect, *absolute or conditional*, voluntary or involuntary, of disposing of or parting with property" (emphasis added). A check is a "conditional" transfer of funds (the condition is the drawee's acceptance). By postponing the "transfer" until final payment, *Antweil* dishonors the language of § 101(54).

For what it is worth, we have other doubts about the three considerations on which *Antweil* relied. Start with ease of proof. Date stamps are more reliable than creditors' self-interested statements about when they received a check. But the dates on a check are not necessarily the right ones. Acceptance of an item is not truly final until the bank's "midnight deadline" has passed. See UCC §§ 4–213, 4–301(1). A bank may stamp a check "paid" yet reverse the credit and dishonor the item, provided it acts before midnight of the "banking day" after its receipt. "Banking day" is itself a term of art and, depending on state law or local practice, may or may not include Saturdays. See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon*

*Bank,* 832 F.2d 1005 (7th Cir.1987). The midnight deadline is an outer limit; a bank's internal rules or a clearinghouse agreement may accelerate the process. So the date stamped on the check by the drawee bank is not dispositive; a date-of-honor rule does not eliminate disputes about timing.

Conformity with the UCC would be important if the definition of "transfer" came from state law, but it does not. *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945); *Prudence Realization Corp. v. Geist,* 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942). The Code uses terms such as "perfection" that acquire significance from state law (§ 547(e)(1) defines perfection as whatever is necessary to defeat a judgment creditor under local law), but none of these terms is in dispute. At all events, a date-of-honor approach tracks the UCC only if federal law is searching for the date of "absolute" (that is, irrevocable) payment, which assumes the very subject in issue. If instead we are searching for the date of conditional transfer, there is no inconsistency between a date-of-delivery rule and any section of the UCC.

As for the purposes of the Code: although the preference-recovery period assures equal treatment of creditors who have claims in the three months before filing and this puts a damper on a stampede to grab assets in the last moments of a firm's life (creditors who use self-help end up no better off than creditors who remain passive), nothing in the idea of a preference period implies an answer to the question at hand. The statutory purposes would be served roughly as well by periods of 80, 90, or 100 days—and by rules defining "transfer" as negotiation or honor of checks. Far more important than the choice between 85 and 95 days is that the rule be simple and frustrate me-first strategies by creditors.

An analogy to § 544, which allows the trustee to avoid any interest that a creditor's hypothetical lien could have trumped on the date of the petition, supports the date-of-honor approach. Until the bank

paid the instrument, some other creditor could have obtained a superior interest in the funds. The approach could be carried over to § 547 by characterizing a check as two § 101(54) transfers: a conditional transfer on delivery, and an absolute transfer on payment. If *either* of these transfers is within 90 days, the argument would conclude, the payment may be reversed. Under the 1898 Act this was indeed the proper understanding. Section 96(a)(2) of the old statute provided that "a transfer of property other than real property shall be deemed to have been made or suffered at the time when it becomes so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings could become superior to the rights of the transferee." That definition pointed inexorably to a date-of-honor rule in *Fitzpatrick.* Similar language appears in § 547(e)(1)(B) of the 1978 Code but serving a different purpose; the hypothetical-judgment approach to defining "transfer" is gone. The change in statutory language persuades us that the question is open to fresh consideration in this circuit.

The hypothetical-judgment definition from the 1898 Act yielded to language in § 547(e)(2) that defines as a transfer the date a conditional interest is created even though, until the transfer becomes absolute by perfection, another creditor can jump the queue. And § 547(e) is not the only other subsection in play. Every court of appeals that has examined the question has rejected the date-of-honor option for purposes of § 547(c), which defines exceptions to § 547(b). See *In re Kroh Brothers Development Co.,* 930 F.2d 648, 651 & n. 3 (8th Cir.1991) (collecting cases).

Decisions under § 547(c) have relied heavily on the statements by the floor managers of the 1978 Code—identical statements by Sen. DeConcini and Rep. Edwards that courts treat as the most reliable legislative interpretation of the bill. The floor managers' joint statement reads: "Contrary to the language contained in the House report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is

delivered for purposes of section 547(c)(1) and (2)." 124 Cong.Rec. 32400 (Sept. 28, 1978), 124 Cong.Rec. 34000 (Oct. 5, 1978). Although the managers mentioned only § 547(c), the statutory *definitions* of transfer in § 101(54) and § 547(e) do not distinguish between § 547(b) and § 547(c). Nothing in the structure or functions of the Code supports such a distinction. The sixth circuit put the matter nicely: "The policy of section 547(b) is to set aside transfers that potentially prefer selected creditors; section 547(c), in turn, defines groups of creditors who are excepted. To give the word 'transfer' a different meaning in these complementary subparts seems inconsistent, unworkable, and confusing." *Belknap*, 909 F.2d at 883.

So considerations of text, simplicity, and legislative goals point toward use of a delivery rule under § 547(b) as well as § 547(c). So too does the treatment of checks in tax law. A cash basis taxpayer counts a payment by check as made when the check is mailed or delivered, so that expenses paid on December 31 may be deducted against that year's income even though the bank does not pay the check until the next calendar year. *Clark v. CIR*, 253 F.2d 745, 748 (3d Cir.1958); *CIR v. Bradley*, 56 F.2d 728 (6th Cir.1932); Treas.Reg. § 1.170A–1(b). See also *Don E. Williams Co. v. CIR*, 429 U.S. 569, 572 n. 2, 582–83, 97 S.Ct. 850, 853 n. 2, 858, 51 L.Ed.2d 48 (1977).

One potential problem with equating transfer and delivery is that a person may deliver checks in advance. Suppose a supplier demands that its customer write checks for payments coming due in the following four months. The supplier plans to cash the checks periodically. Immediately after its bank pays the final check, the customer files a petition in bankruptcy. Let us suppose that all of the checks are honored during the 90 days before filing. Would the delivery of these instruments before the beginning of the period prevent recovery under § 547(b), even though all the payments took place within the period and this creditor obtained a preference over others? Section 101(54) creates such a possibility by including conditional transfers within the definition. The sixth circuit turned in *Belknap* to the presentment rules of the Uniform Commercial Code and held that unless the creditor initiates collection within 30 days, see UCC § 3–503(2)(a), the payment may be recovered as a preference. This mitigates the problem but is hard to justify; the 1978 Code does not incorporate state rules on presentment into the definition of "transfer." Moreover, the UCC does not *require* presentment within 30 days. Section 3–503(2)(a) says that it is presumptively reasonable to initiate collection within 30 days, but the maker of an instrument may agree to a longer time "expressly or by implication". UCC § 3–511(2)(a). In our hypothetical the creditor has agreed to deferred presentment, and nothing in the UCC scotches the arrangement.

It is better to use the provision in § 547 addressed to delayed consummation of a transaction. The inclusion of conditional payments in the § 101(54) definition of a "transfer" creates a need for a limit on the time before the payment becomes absolute, lest the gap undermine the function of the preference recovery provisions. Section 547(e) sets the outer limit—ten days. A transfer occurs "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time". 11 U.S.C. § 547(e)(2)(A). This language is jarring: what does it mean to "perfect" a *transfer*, as opposed to a security interest? Debtors transfer assets; creditors perfect security interests. *Antweil* held that § 547(e) speaks exclusively to security interests, the subject of § 547(c)(3). 931 F.2d at 694 n. 3. Yet § 547(e) specifies that it governs "this section"—that is, all of § 547. Although "perfection" in the UCC refers to security interests, the term is not so limited in § 547(e). Section 547(e)(1)(B) says that a "transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Sound familiar? This is a modified version of § 96(a)(2) of the 1898 Act. Both the 1898 language and the 1978 revision define "perfection" more broadly than filing financing

statements under the UCC. Honoring a check "perfects" the transfer because thereafter "a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." On this understanding § 547(e) applies, just as it says, to all of § 547; it also solves the problem of late presentment. The sixth circuit's view in *Antweil*, by contrast, leaves § 547 incomplete and drove that court to define "transfer" differently for purposes of § 547(b) and (c), the one outcome unambiguously precluded by the language of the Code. We therefore agree with the ninth circuit in *Wadsworth* that honor of a check is "perfection" of the transfer for purposes of § 547(e)(2)(A).

A corollary to this conclusion is that transfer occurs on the creditor's receipt of a check rather than the debtor's sending of the instrument. The transfer does not "take[] effect between the transferor and the transferee" until the transferee receives the check. Cf. *Belknap*, 909 F.2d at 884 (selecting date of receipt, but on different reasoning). Thus a payment by check mailed 91 days before filing the bankruptcy petition and received the next day may be avoided under § 547(b). A creditor that receives the check 91 days before the filing and presents it promptly is sheltered by § 547(e)(2)(A), for the banking system rarely takes more than a calendar week to honor the check. Even the slightest delay by the creditor creates risk that honor will occur more than 10 days after receipt; § 547(e) thus will frustrate any strategy of deferred presentment.

The creditors in our case received their checks 95 days before the filing of the bankruptcy petition. They initiated collection the same day, and the debtor's bank honored the instruments five days later. The "transfer" occurred outside the preference period, and the transfer was completed within the 10 days allowed by § 547(e). These payments are not avoidable under § 547(b).

REVERSED.