In re HOSTELLERIE d'ARGENTEUIL,
INC., Debtor.

**William ROEMELMEYER,**
**Trustee, Plaintiff,**

v.

**Seymour MANDEL and Marta Cuan**
**Mandel, his wife, Defendants.**

**Bankruptcy No. 82–02205–BKC–JAG.**
**Adv. No. 83–0623–BKC–JAG–A.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 17, 1984.

Steven H. Friedman, Miami, Fla., for plaintiff, trustee.

Patricia A. Redmond, Miami, Fla., for defendant, creditor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

THIS CAUSE was initiated by the filing of an adversary proceeding by the Creditors' Committee of HOSTELLERIE d'ARGENTEUIL, INC., Debtor-in-Possession, against SEYMOUR MANDEL and MARTA CUAN MANDEL, his wife, on July 11, 1983. Upon agreement of the parties, the Trustee was substituted for the Creditors' Committee as the Party Plaintiff.

Trial of this adversary proceeding was held on November 16, 1983. This Court, having carefully considered the testimony of the witnesses at trial, and the demeanor of the witnesses, and having reconsidered the testimony by listening to the tapes of the trial proceedings, and having reviewed and considered all evidence presented at trial, makes these Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On or about November 17, 1981, the Defendants did purchase 30% of the common stock of Hostellerie d'Argenteuil, Inc., the Debtor, for $75,000.00.

2. Contemporaneous with the purchase of the 30% stock interest in the Debtor, Defendants did loan to the Debtor, on an unsecured basis, the sum of $75,000.00.

3. Defendants attempted to divest themselves of their stock interest and ownership in the Debtor, by way of correspondence dated May 10, 1982, addressed to Pierre and Christine DeVautravers. The May 10, 1982 correspondence represents a unilateral expression by the Defendants of their desire to convert their stock ownership into unsecured debt. Furthermore, the Defendants did not follow the procedures prescribed by the Shareholders'

Agreement executed on November 17, 1981, by and between the Defendants and Christine DeVautravers, for the sale of the Debtor's corporate stock by one of the Debtor's shareholders.

4. However, in June of 1982, all parties agreed to the change of status of the Defendants, as evidenced by the delivery to the Mandels of a note for $150,000.00 and the simultaneous execution of a security agreement whereby the Debtor granted to the Defendants a security interest in all of its assets. The security interest was perfected by the recording of a UCC–1 financing statement with the Secretary of State of Florida at the same time.

5. On November 10, 1982, and within one (1) year of the recording of the financing statement executed by the Defendants and the Debtor, the Debtor filed its Chapter 11 petition.

6. Defendants, through the conversations between Defendant Seymour Mandel and Pierre DeVautravers, were aware at the time of the recording of the financing statement executed in favor of the Defendants, that the Debtor was insolvent, by virtue of the reports received from Mr. DeVautravers as to the precarious financial condition of the Debtor. Furthermore, Defendants had knowledge of the Debtor's insolvency by virtue of the fact that the Defendants made additional loans to the Debtor during 1982 in order to enable the Debtor to pay its expenses, which additional loans were not repaid by the Debtor. This fact, taken in consideration with the other evidence presented at trial, thus substantiates Plaintiff's allegation that the Debtor was insolvent at the time of the recording of the financing statement with the Secretary of State.

7. The Shareholders' Agreement between the Mandels and Christine deVautravers gave Defendants, as shareholders, the right to veto any corporate action.

## CONCLUSIONS OF LAW

1. The failure of the Debtor to formally issue stock certificates in favor of the Defendants is not significant, and does not vitiate Defendants' 30% stock ownership in the Debtor, because of the Defendants' rights under state law once they had paid the purchase price.

2. Defendants were "affiliates" of the Debtor because of the rights given them by the Shareholders' Agreement. Plaintiff's contention that each Defendant falls within the definition of an "affiliate", as defined by Section 101(2) of the Bankruptcy Code, is supported by the Legislative History of the Bankruptcy Code, as recited in 1983 Collier Pamphlet Edition, Part 1, at Page 9. Section 101(2)(A) defines an "affiliate" as an entity "... that directly or indirectly owns, controls or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, even though the shareholder does not exercise his control." The Legislative History, as cited in Colliers, states that "... the use of 'directly or indirectly' in subparagraphs (A) and (B) is intended to cover situations in which there is an opportunity to control, and where the existence of that opportunity operates as indirect control." The evidence presented in this adversary proceeding substantiates that the Defendants, through their stock ownership and in accordance with the terms of the Shareholders' Agreement, possessed at a very minimum the opportunity to control the Debtor.

3. Defendants, SEYMOUR MANDEL and MARTA CUAN MANDEL, as "affiliates" of the Debtor, were "insiders" of the Debtor on June 9, 1982, the date upon which they obtained a security interest in the assets of the Debtor, because their change in status from an insider to a creditor occurred in the very transaction which is also preferential.

4. Based upon the foregoing Findings of Fact, the execution of the security agreement and filing of a financing statement by Defendants constitutes a preferential transfer under Section 547 of the Bankruptcy Code. Said transfer is hereby set aside and voided and the Defendants have no security interest in any of the assets of the Debtor.

5. Defendants have an unsecured claim in the amount of $150,000.00.