**In re EECO INCORPORATED, a Delaware corporation, Debtor.**

**EECO INCORPORATED, Plaintiff,**

**v.**

**Vincent SMEDES, Defendant.**

**Bankruptcy No. SA 90–02995 JW.**

**Adv. No. SA 91–3111 JW.**

United States Bankruptcy Court, C.D. California.

March 20, 1992.

William D. Coffee, Merserve, Mumper & Hughes, Irvine, Cal., for defendant Vincent Smedes.

Michael G. Spector, Fabozzi, Prenovost & Normandin, Santa Ana, Cal., for plaintiff EECO Inc.

### MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

The Matter under consideration in this Chapter 11 case is a Complaint to Recover Preferences filed on March 4, 1991, by Plaintiff/Debtor, EECO Incorporated ("EECO") against Defendant Vincent Smedes pursuant to Title 11 U.S.C. § 547. On December 19, 1991, Smedes filed a Motion for Summary Judgment, or in the Alternative, Summary Adjudication of Issues. On December 31, 1991, EECO filed its Cross–Motion for Summary Judgment, or in the Alternative, Summary Adjudication of Issues, as well as its Opposition to Defendant's Motion. Defendant's Reply was filed on January 7, 1992. The Court's jurisdiction is not contested. The Court has reviewed the record, heard argument of counsel on January 9, 1992 and finds as follows:

### I.  FACTUAL AND PROCEDURAL BACKGROUND

EECO is in the business of developing, producing and selling various electronic components, with its principal place of business in Santa Ana, California. On May 2, 1990, it filed for Bankruptcy Court protection under Chapter 11 of the Bankruptcy Code. EECO's First Amended Plan of Reorganization was confirmed on January 30, 1991.

The First Amended Plan provides for a majority of EECO's shares to be issued to creditors who are members of the Official Committee of Unsecured Creditors (the "Committee"). The Committee has elected a majority of the directors, who in turn hired new management.

After the change in management, EECO filed preference actions against six former officers of EECO who were no longer performing services for EECO, but had received compensation during the one year period prior to the filing of the Petition. The defendant herein, Vincent Smedes, is one of the former officers who received payments which EECO now seeks to avoid under 11 U.S.C. § 547(b).

Smedes was hired by EECO on June 2, 1986 as Vice President of Materials. In that capacity, he was responsible for purchasing, production control and distribution at EECO. Approximately six months later, Smedes became the Vice President of Operations. As Vice President of Operations, his responsibilities encompassed supervising manufacturing and engineering quality in addition to the responsibilities as Vice President of Materials. On May 23, 1988, Smedes became the Vice President for Special Projects. In this capacity he was responsible for coordinating the "Corporate Earnings Improvement Program," a program which was established to reduce costs and increase earnings.

By late 1988, Smedes had decided to leave the Debtor's employ. This decision resulted in EECO and Smedes entering into

an oral severance agreement during the last quarter of 1988. This agreement was later formalized in writing during January of 1989. Pursuant to this severance agreement, Smedes was to cease working on present assignments as of March 31, 1989, but was to be considered on "special assignment," and was not to perform any work. This special assignment status, which was apparently arranged in order to give Smedes an opportunity to secure alternative employment, was to continue through September 31, 1989. During this period, and pursuant to the severance agreement, EECO was authorized and expected to represent to any interested third persons that Smedes was "Corporate Vice President working on special projects." It is clear from the record, however, that Smedes did not perform any services for the Plaintiff after March 31, 1989. Indeed, when the defendant left EECO on March 31, 1989, he surrendered his security badge and building and office keys, and thus no longer had access to the Debtor's premises. In addition, after March 31, 1989, Smedes had no involvement or communications with EECO management.

As a result of the separation package arranged with EECO, Smedes continued to receive compensation and use of a company automobile until September 1, 1989. For this period (March 31, 1989 to September 1, 1989) Smedes received a total of $44,095.39. It is these payments which EECO seeks to recover under 11 U.S.C. § 547.

## II. DISCUSSION

Under 11 U.S.C. § 547(b), a trustee or debtor-in-possession may recover property for the benefit of the debtor's estate if there was a transfer of property of the debtor

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables the creditor to receive more than he would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (West 1979 & Supp. 1991). To establish a preferential transfer under § 547, the burden of proof is on the plaintiff to prove each element set out in § 547(b). *Grover v. Gulino (In re Gulino)*, 779 F.2d 546, 549 (9th Cir.1985); 11 U.S.C. § 547(g) (West 1991). The parties acknowledge that subsections (b)(1), (2) and (5) of § 547 are not in dispute. Two § 547(b) issues are therefore raised by these cross-motions for summary judgment:

(1) were the transfers made while the Debtor was insolvent? [§ 547(b)(3)]; and

(2) since these transfers occurred more than ninety days prior to the filing of the petition in bankruptcy, was Smedes an insider at the time of transfer? [§ 547(b)(4)(B)].

## A. WERE THE TRANSFERS MADE WHILE THE DEBTOR WAS INSOLVENT?

Insolvency exists where the debtor's liabilities are greater than all of the debtor's property or assets, at a fair valuation, at the time of the alleged transfer. *Akers v. Koubourlis (In re Koubourlis)*, 869 F.2d 1319, 1321 (9th Cir.1989); 11 U.S.C. § 101(32)(A) (West 1991). Normally, fair value of the debtor's assets for preference purposes is going concern or fair market price. *Fryman v. Century Factors (In re Art Shirt Ltd.)*, 93 B.R. 333, 341 (E.D.Pa. 1988). As the alleged transfers occurred more than 90 days prior to the filing of EECO's petition, there is no presumption of

insolvency. *See* 11 U.S.C. § 547(f) (West 1979).

In support of its cross-motion, EECO has provided the Court with a series of consolidated balance sheets which purport to reflect that total liabilities exceeded total assets during the period in question. Smedes argues that the Debtor's evidence is insufficient to establish insolvency for two reasons. First, the consolidated balance sheets do not indicate whether the assets are valued at book value, or at fair market value. Smedes asserts that because there is no indication as to what valuation is being used, there is no way to determine whether the debtor has met its burden of proof on this issue.

■ Second, Smedes has provided the Court with the quarterly financial reports EECO submitted to the Federal Securities and Exchange Commission ("10–Q Reports") for the period during which these transfers were made. The 10–Q Report submitted for the second quarter of 1989, dated July 2, 1989, and filed August 15, 1989, contains a consolidated balance sheet showing total assets exceeding total liabilities by six million five hundred and one thousand dollars ($6,501,000). The 10–Q Report submitted for the third quarter of 1989, dated October 1, 1989, and filed November 15, 1989, contains a consolidated balance sheet showing total assets exceeding total liabilities by ten million five hundred and fifty-four thousand dollars ($10,-554,000). Smedes argues that based on these reports, this Court should hold that the Debtor was solvent during the relevant period and that therefore EECO's has failed to satisfy § 547(b)(3) grounds. Alternatively, defendant claims that this discrepancy at least raises an issue of fact as to the Debtor's solvency which cannot be decided on summary judgment.

This Court agrees with the defendant's latter proposition. As the record presently stands, the scant evidence before the Court is insufficient to determine whether EECO was solvent or insolvent during the period from May to September, 1989. The Court therefore finds that the inconsistency between the debtor's prepetition and postpetition balance sheets raises an issue of fact that must be determined at trial.

## B. WAS SMEDES AN INSIDER AT THE TIME OF TRANSFER?

Smedes maintains that since the transfer took place more than ninety days before the filing of the petition, there must be a finding that subsection (b)(4)(B) is satisfied. Subsection (b)(4)(B) requires that defendants be insiders where the transfers are made between ninety days and one year of the filing of the petition. EECO claims that pursuant to his severance agreement, Smedes remained an officer (and therefore an insider) during the time he received his severance checks. While admitting that he was at one time an officer of the Debtor, Smedes counters that notwithstanding the language in the severance agreement, he was no longer an officer of the Debtor after March 31, 1989, the last date on which he had any involvement with or access to EECO management. Smedes contends that if he ceased being an officer on March 31, 1989, then he was no longer an insider at the time he received the transfers. EECO counters that the language in the severance agreement should control, but that in the alternative, should the court find Smedes was no longer an insider at the time he received the payments from EECO, it is sufficient for purposes of § 547(b)(4)(B) that Smedes was an insider at the time the transfers were *arranged.*

Courts have split on the exact meaning of the "at the time of such transfer" language found in subsection (b)(4)(B). One line of cases, which EECO urges the Court to adopt, holds that a "creditor who is an insider at the time of transfer of the debtor's property is *arranged* is an insider at the time of the transfer." *DeRosa v. Buildex Incorporated (In re F & S Cent. Mfg. Corp.),* 53 B.R. 842, 849 (Bankr.E.D.N.Y. 1985) (emphasis added); *see also Pirrone v. Toboroff (In re Vaniman International Inc.),* 22 B.R. 166, 189 (Bankr.E.D.N.Y. 1982); *Roemelmeyer v. Mandel (In re Hostellerie d'Argenteuil, Inc.),* 42 B.R. 292, 293 (Bankr.S.D.Fla.1984); *Chase Manhattan Bank, N.A. v. Dent (In re Trans Air,*

*Inc.*), 79 B.R. 947 (Bankr.S.D.Fla.1987). If the transfer occurred when it was arranged the debtor may avoid it and recover the monies paid to Smedes. Another line of cases, upon which Smedes relies holds that "[t]he language of section 547(b)(4)(B) clearly states that an insider relationship is to be determined on the *exact date* of the challenged transfer." *McWilliams v. Gordon* (*In re Camp Rockhill, Inc.*), 12 B.R. 829, 834 (Bankr.E.D.Pa.1981) (Emphasis in the original); *see also Tennessee Wheel & Rubber Co. v. Street* (*In re Tennessee Wheel & Rubber Co.*), 62 B.R. 1002 (Bankr. M.D.Tenn.1986); *Dent v. Martin* (*In re Dent*), 86 B.R. 290 (S.D.Fla.1988); *Tidwell v. Amsouth Bank, N.A.* (*In re Cavalier Homes of Georgia, Inc.*), 102 B.R. 878 (M.D.Ga.1989).

In the present case, all transfers from EECO to Smedes were by check. For purposes of § 547(b)(4), the Ninth Circuit Court of Appeals has held that "[a] debtor's payment by check on an existing debt, presented to the bank within a reasonable time and honored by the bank, is deemed made at the time the debtor gave the check to the creditor ..." *Robert K. Morrow, Inc. v. Agri–Beef Co.* (*In re Kenitra, Inc.*),

797 F.2d 790, 791 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987); *Kupetz v. Elaine Monroe Associates, Inc.* (*In re Wolf & Vine*), 825 F.2d 197 (9th Cir.1987). For purposes of § 547(b)(4), a "reasonable time" has been defined as thirty days. *In re Wolf & Vine*, 825 F.2d at 201–202.[1] In this case, therefore, payment occurred when EECO gave Smedes the checks.

This finding, however, does not compel a decision in Smedes' favor; for the outcome of this issue does not hinge upon when the transfer occurred, *but on Smedes' insider status at that time.* For example, if an insider put together a transfer for himself, formally resigned, and then a minute later received the monetary benefits from the deal he had made while an insider, it would be clear that the transfer would be avoidable, even without a showing of fraud or intent to delay or hinder required by 11 U.S.C. § 548. The insider's formal resignation did not change the nature of the transfer in any way. Further, to hold that one could gain non-insider status in such a manner would thwart § 547's goal of recovering assets from insiders.[2]

---

**1.** While Ninth Circuit law is clear on this point, this Court does note that there is presently a disagreement among the circuits regarding this issue. Five definitions of the date of "transfer" by check are possible. Transfer may occur (1) when the debtor tenders (mails or delivers) the check; (2) when the creditor receives the check; (3) when the creditor negotiates the check; (4) when the debtor's bank honors the check; or (5) when the creditor receives the check, provided the bank honors the check within 10 days.

In the Fourth Circuit, "the date of delivery to the creditor [is] the date of transfer." *Counts v. Wang Laboratories, Inc.* (*In re Virginia Information Systems Corp.*), 932 F.2d 338, 339 (4th Cir. 1991). The Sixth Circuit has held that the transfer occurs on delivery of the check, with "delivery occur[ing] upon the creditor's actual receipt of the check." *Official Unsecured Creditors' Committee of Belknap, Inc. v. Shaler Corp.* (*In re Belknap, Inc.*), 909 F.2d 879, 884 (6th Cir.1990). The Seventh Circuit has decided that "a transfer occurs on receipt of the check, provided the check is honored within 10 days." *Global Distribution Network, Inc. v. Star Expansion Co.,* 949 F.2d 910, 910 (7th Cir.1991). Finally, the Tenth and Eleventh Circuits have adopted a date of honor rule. *Johnson v. Barnhill* (*In re Antweil*), 931 F.2d 689, 694 (10th Cir.1991), *cert. granted* under the name *Barnhill v. Johnson,* —

U.S. ——, 112 S.Ct. 48, 116 L.Ed.2d 26 (1991). *See Nicholson v. First Invest. Co.,* 705 F.2d 410, 413 (11th Cir.1983); *see also New York City Shoes, Inc. v. Bentley International, Inc.* (*In re New York City Shoes, Inc.*), 880 F.2d 679, 681 n. 2 (3rd Cir.1989) (dicta).

As this issue is presently before the United States Supreme Court, it is important to point out that this Court's decision will not be affected should a different rule be adopted. In the year prior to EECO's filing, EECO tendered all the checks, Smedes received all the checks, Smedes negotiated all the checks, and the bank honored all the checks. Therefore, regardless of which timing mechanism the Supreme Court adopts, the result in this case remains unchanged.

**2.** Congress established the one-year reach-back provision in order to "ameliorate the insider's potential leverage in dealing with the debtor shortly before bankruptcy." *Jahn v. Economy Car Leasing* (*In re Henderson*) 96 B.R. 820, 825 (Bankr.E.D.Pa.1989) citing Nimmer, *Security Interests in Bankruptcy: An Overview of Section 547 of the Code,* 17 House L.Rev. 289, 293 n. 10 (1980).

Because of his close relationship with the debtor, an insider typically knows more about the debtor's financial affairs than the debtor's other creditors, and is often in the position to

According to Smedes, he ceased being an insider on March 31, 1989 and started receiving payments on May 4, 1989. This brief period between Smedes' alleged departure from the debtor's employ and the time he received his payment should not be the proper focus in making the determination for nothing Smedes did during this period changed the nature of the transfers. It is for this reason that the Court holds that an insider is no longer an insider when the transfer is no longer a function of or a result of that entity's or person's insider status.[3]

### III. CONCLUSION

One who, like Smedes, uses an insider position to put in motion a step-transaction, such as a golden parachute severance package or stock buyout agreement, cannot become a non-insider for purposes of that transaction by simply saying "I resign." Therefore, the Court finds that Vincent Smedes was an insider for purposes of § 547(b)(4)(B) at the time he received transfers in the amount of $44,095.39. Additionally, the Court finds that a determination as to EECO's financial condition will require a further hearing. Therefore, Defendant's Motion for Summary Judgment is DENIED and Plaintiff's Cross–Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

This memorandum of decision contains this Court's findings of fact and conclusions of law. Counsel for the Plaintiff shall lodge and serve a proposed order consistent with this memorandum of decision.

---

influence or control, at least in part, the debtor's actions. An insider is usually the first to know that a debtor is contemplating bankruptcy. Armed with this information and the power to control the debtor, the insider may step ahead of other creditors demanding payment and then influence the timing of the debtor's bankruptcy petition to avoid the ninety-day preference period. *Id.*

3. As the Court holds that an insider is no longer an insider when the transfer is no longer a function of or a result of that entity's or person's insider status, Smedes' argument regarding the exact date on which he left EECO is inconsequential and need not be addressed. In addition, Smedes has raised three affirmative defenses to plaintiff's preference action: the ordinary course of business defense set out in § 547(c)(2), as well as laches and estoppel. Since plaintiff has not carried its burden of proof as to all elements of § 547(b), this Court does not reach the affirmative defenses raised by Smedes.