**In re Lewis, Robert WAYNE, Lewis, Blanche Marie, Debtors.**

**Gene T. Chambers, Trustee, Plaintiff,**

**v.**

**Alfred Pickard and Bonni–Belle Pickard, Defendants.**

**Bankruptcy No. 98–06290–6J7. Adversary No. 99–33.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

July 29, 1999.

William Lawless, Altamonte Springs, Florida, for defendants.

Sean D. Concannon, Orlando, Florida, for plaintiff.

## ORDER GRANTING TRUSTEE'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAREN S. JENNEMANN, Bankruptcy Judge.

This adversary proceeding came on for hearing on May 20, 1999, on the Motion by Defendants for Summary Judgment (Doc. No. 5) and the Cross–Motion for Summary Judgment (Doc. No. 12) filed by the Plaintiff, the Chapter 7 trustee, Gene T. Chambers (the "Trustee"). In Count II of the Trustee's Complaint, the Trustee asserts that the Defendants, Alfred and Bonni–Belle Pickard (the "Defendants"), received a preferential transfer which is subject to avoidance under Sections 547 and 550 of the Bankruptcy Code.[1] After considering the pleadings, oral arguments and positions of interested parties, the Trustee's motion is granted, and the Defendant's motion is denied.

As to count II of the Trustee's Complaint, the facts are undisputed. In 1990, the Debtors, Robert Wayne and Blanche Marie Lewis (the "Debtors"), received a loan in the amount of $7,500 from the Defendants. The original loan initially was payable in 1993; however, the Defendants voluntarily agreed to extend the repayment of the loan for three additional years until November 1996.

In 1996, the Defendants were serving as missionaries in India and did not have a feasible way to receive the Debtors' payment. As such, the Defendants requested the Debtors to make the loan payment via

1. Unless specified otherwise, all references to statutory sections refer to Title 11 of the United States Code.

a Certificate of Participation maintained with the Florida United Methodist Fund ("Fund"). Essentially, the Debtors opened an account at the Fund in their name, not in the name of the Defendants, Mr. and Mrs. Pickard. The Debtors deposited the full amount due on the loan into this account on November 7, 1996. The account accrued interest but had no other activity until the Pickards returned to the United States in May, 1998.

Upon their return to the United States, the Pickards requested the Debtors to obtain a check from the monies maintained in the Debtors' account at the Fund. The Defendants directed the check to be made payable to a third party designated by them. The Debtors complied with this request, and a certified check in the amount of $10,432.81 was issued to the party designated by the Defendants on May 21, 1998. The transfer drained all monies from the account, and the account later was closed.

No question exists that the Debtors intended to repay the loan due to the Defendants when they opened the account with the Fund on November 7, 1996. Nor is there any dispute that the Debtors maintained full control and access to the monies in the account up to the day of its ultimate disposition on May 21, 1998. Further, the parties agree that all other elements of Section 547 were satisfied, specifically that the funds in question were transferred to or for the benefit of a creditor—the Defendants—for or on account of an antecedent debt owed by the Debtors prior to the transfer, that the transfer was made while the Debtors were insolvent, and that the Defendants received more than they otherwise would be entitled to receive in a Chapter 7 proceeding.

The only issue is whether the transfer was made within 90 days before the filing of this Chapter 7 case on July 23, 1998. The Debtors argue that, upon the initial deposit of the monies into the account with the Fund, on November 7, 1996, they had completed a transfer to the Defendants because the Fund was, in essence, an agent of the Defendants. The Trustee asserts that, because the Debtors continued to maintain full control and access to the monies, no transfer occurred until May 21, 1998.

The question of what constitutes a transfer and when the transfer is complete is a matter of federal law. *Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (*citing McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–370, 65 S.Ct. 405, 89 L.Ed. 305 (1945)). Section 101(54) defines transfer to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or departing with property or with an interest in property." 11 U.S.C. § 101(54) (1999). Although this definition is very broad, certain limits exist. For example, merely delivering a check does not constitute a transfer. *Barnhill*, 503 U.S. at 395, 112 S.Ct. 1386. Nor is the opening of a bank account a transfer. A bank deposit merely constitutes a chose in action or a right to money. *See National Foundation v. Palmer First National Bank and Trust Co. of Sarasota (In re Estate of Thourez')*, 166 So.2d 476 (Fla.2d DCA 1964). The depository owes a debt in the amount of the funds deposited back to the party opening the account. *Id.* Therefore, upon depositing the money into the Fund, the Debtors gained a chose in action against the Fund for the amount of the funds deposited.

Conversely, the Pickards did not gain anything when the Debtors deposited the monies in the Fund. The Pickards did not receive any interest in monies because the Debtors did not depart with any interest in the monies. *See Barnhill*, 503 U.S. at 398, 112 S.Ct. 1386 (finding that the creditor did not receive an interest in the debtor's property until check was honored by bank). The Debtors maintained complete control over the account. Although the Debtors did not exercise this right to control and honestly believed the monies

were deposited on behalf of the Defendants, the fact remains that the Debtors could have used the monies at anytime. Moreover, the Defendants had no ability to exert control over the account because the account was not in the Defendants' names. Therefore, because the Debtors did not depart with an interest in property at the time of making the deposit on November 7, 1996, and because the Pickards did not gain an interest in property of the Debtors' at the time the deposit was made, no transfer occurred at that time.

■ Furthermore, even though the parties may have agreed that the deposit of the Debtors' monies into the Fund constituted payment, this agreement does not constitute the date of the transfer under the Bankruptcy Code. The date of an agreement to transfer funds does not determine the date of the transfer for preference purposes. *Durant's Rental Center, Inc. v. United Truck Leasing, Inc., (In re Durant's Rental Center Inc.)*, 116 B.R. 362, 366 (Bankr.D.Conn.1990); *accord McCullough–Cartwright Pharm. Corp. v. Chemical Packaging Corp. (In re McCullough–Cartwright Pharm. Corp.)*, Nos. 88 B 2600, 90 A 317, 1991 WL 242985, at *1 (Bankr.N.D.Ill. Sept. 19, 1991).

In *In re McCullough–Cartwright*, the debtor agreed with its creditor to transfer some chemicals to the creditor as payment of an antecedent debt. *Id.* at *2. The agreement was made well outside of the preference period. *Id.* The parties noted the transfer of chemicals on their books at the time of the agreement. *Id.* The actual physical delivery of the chemicals, however, occurred within the 90–day preference period. *Id.* at *4–5.

The Bankruptcy Court for the Northern District of Illinois considered § 547(e)(2) and § 547(e)(1)(B) to determine when the transfer occurred, and, applying this standard, the court determined that the transfer of chemicals was not made until the creditor took actual physical possession of the chemicals. Section 547(e)(2) provides, in relevant part, that a transfer for prefer-

ence purposes is deemed *made* (A) at the time of such transfer, if the transfer is perfected within 10 days, or (B) at the time of perfection if such transfer is not perfected within 10 days of the transfer. 11 U.S.C. § 547(e)(2)(A)–(B) (1999). Section 547(e)(1)(B) provides that "a transfer of property other than real property is *perfected* when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B) (1999). Consequently, under the Bankruptcy Code, a preliminary determination must be made as to when the transfer was perfected in order to determine when it occurred. *Id.* at *10. Accordingly, the transfer occurred at the time the creditor took physical possession of the chemicals. *Id.* The fact that the parties intended for the transfer to occur at the time of the earlier agreement did not change the result.

Likewise, in this case, the transfer did not occur at the time that the Debtors agreed to repay the loan by placing the monies in the Fund. Under § 547(e)(2), the transfer was not perfected at the time the Debtors deposited the money in the Fund because a creditor on a simple contract could acquire a judicial lien on the monies held in the Fund superior to the rights of the Pickards at any time before May 21, 1998. Indeed, if this bankruptcy had been filed prior to May 21, 1998, the Trustee clearly would have administered the monies deposited with the Fund as property of this estate. Therefore, under § 547(e)(1)(B), the transfer was not perfected until the Debtors obtained the check at the direction of the Defendants on May 21, 1998. At that time, the Defendants gained an interest in the Debtors' property that was superior to any subsequent judicial lienors. Consequently, under § 547(e)(2)(B), the transfer occurred on the date it was perfected, May 21, 1998, and occurred within 90 days of the filing of this case. The transfer is avoidable pursuant to § 547 of the Bankruptcy Code.

The Trustee is entitled to a final judgment against the Defendants in the amount of $10,432.81. The Trustee's Cross–Motion for Summary Judgment (Doc. No. 12) is granted. The Motion for Summary Judgment (Doc. No. 5) filed by the Defendants is denied. A separate final judgment consistent with this order shall be entered.