In re NETBANK, INC., Debtor.

Clifford Zucker, in his capacity as
Liquidating Supervisor for
NetBank, Inc., Plaintiff,

v.

Douglas K. Freeman, Defendant.

Bankruptcy No. 07–04296–JAF.

Adversary No. 09–00452–JAF.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 19, 2010.

Michael D. Langford, Shane G. Ramsey, Kilpatrick Stockton LLP, Atlanta, GA, for Plaintiff.

Raye Curry Elliott, Akerman Senterfitt, Jacksonville, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF COMPLAINT

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon Defendant Douglas K. Freeman's Motion to Dismiss Count One of Complaint (the "Motion to Dismiss"), Liquidating Supervisor's Response in Opposition to Defendant Douglas K. Freeman's Motion to Dismiss Count One of Complaint (the "Response to the Motion to Dismiss"), and Defendant's Reply to Plaintiff's Response

to Motion to Dismiss (the "Reply"). Upon a review of the Motion to Dismiss, the Response to the Motion to Dismiss, and the Reply, the Court finds it appropriate to grant the Motion to Dismiss.

Plaintiff filed this adversary complaint seeking to avoid a transfer from Debtor to Defendant pursuant to §§ 547 and 548 of the Bankruptcy Code. Pursuant to an employment agreement dated November 18, 2001 and amended April 1, 2002, and April 30, 2004, Defendant was Debtor's Chief Executive Officer. On October 3, 2006, Defendant and Debtor entered into a Separation Agreement and General Release (the "Separation Agreement"). The Separation Agreement provided that Defendant would resign from his positions as director, Chief Executive Officer, and Chairman of the Board of the Debtor, effective as of the close of business on October 5, 2006 (the "Separation Date"). Section 4 of the Separation Agreement provided, among other things, that Debtor would tender to Defendant a lump sum payment of $2.9 million on or about the Separation Date (the "Transfer"). At the time the Transfer was arranged and the Separation Agreement was negotiated Defendant was the Chief Executive Officer of the Debtor, Chairman of the Debtor's Board of Directors, and a director of the Debtor. On or about the Separation Date, the Debtor made the Transfer to Defendant.

### Discussion

Defendant seeks to have Count One of the Complaint dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that it fails to state a claim pursuant to § 547 of the Bankruptcy Code.

### Rule 12(b)(6) Standard

When addressing motions to dismiss, courts for many years followed the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, in 2007, the Supreme Court observed that "this famous observation has earned its retirement," and propounded a heightened standard for pleading factual allegations. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) the Supreme Court held, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Id.* at 555, 127 S.Ct. 1955. As the Eleventh Circuit, interpreting *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), recently held, "[a] complaint must state a plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' ... The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss ... The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal, supra,* and *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955) (citations omitted, emphasis in original). Additionally, although a court must accept all well pled facts as true, it is not required to accept a plaintiff's legal conclusions. *Id.* at 1260.

### Application to the Instant Case

Section 547(b) of the Bankruptcy Code provides for the avoidance of certain transfers to a creditor

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

**(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

By its terms, Bankruptcy Code section 547(b)(4)(A) restricts avoidances to transfers made "on or within 90 days before the date of the filing of the petition." Section 547(b)(4)(B) provides for an extended time frame of one year before the date of the filing of the petition, but only "if such creditor *at the time of such transfer* was an insider." 11 U.S.C. § 547(b)(4)(B) (emphasis supplied).

The Complaint states that the Petition Date was September 28, 2007, and the Transfer occurred "on or about the Separation Date" of October 5, 2006. Complaint, at ¶¶ 1 (petition date of September 28, 2007), 19 (Separation Date of October 5, 2006), 32 (Transfer "on or about the Separation Date"). While the Complaint is vague in its description of the precise date of the Transfer, it is clear that the Transfer did not occur within ninety days before the date of the filing of the Petition. Accordingly, Count One is only viable if Freeman was an insider "at the time of the transfer." [1]

Defendant argues that in order to be an insider for purposes of § 547(b)(4)(B), a transferee must have been an insider on the actual date of the transfer, not the date the transfer was arranged. Defendant contends that the Complaint fails to allege that Defendant was an insider at the time the Transfer was made and instead alleges that Defendant was an insider when he negotiated and executed the Separation Agreement and was paid "on or about" the Separation Date, the day he resigned his insider position. While paragraph 40 of the Complaint does in fact allege that Defendant was an insider at the time of the transfer, Plaintiff concedes in the Response to the Motion to Dismiss that Defendant received the Transfer the day after his resignation as Debtor's CEO became effective. Plaintiff contends that the Court should look to the date the Transfer was arranged.

Although the language of § 547(b)(4) is clear, the Eleventh Circuit Court of Appeals has not addressed the issue of whether, in order to be an insider for purposes of § 547(b)(4)(B), a transferee must have been an insider on the actual date of the transfer. The majority of courts which have addressed the issue have found that the date a transferee "arranges" (*i.e.,* negotiates and signs) an agreement entitling him to payment is irrelevant; under the "exact date" doctrine, it is the date of the payment that counts when bringing an insider preference claim. *See, e.g., Butler v. David Shaw, Inc.,* 72 F.3d 437, 441–42 (4th Cir.1996); *Stanley v. U.S. Bank, N.A.,* Case No. 03–02109 (S.D.Tex. Sept. 24, 2008); *Dent v. Martin,* 86 B.R. 290, 292 (S.D.Fla.1988) ("The ... hold[ing] that '[a] creditor who is an insider at the time the transfer of the debtor's property is arranged is an insider at the time of the transfer' ... is contrary to the plain language of [section 547(b)(4)(B) ]"); *Terry v. Paschall (In re Paschall),* 403 B.R. 366, 376–77 (Bankr.E.D.Va.2009) ("The insider relationship is determined as of the date of the transfer of the Properties."); *Pummill v. McGivern (In re American Eagle Coatings, Inc.),* 353 B.R.

---

1. The Supreme Court has held that a payment of funds through a bank, by check or otherwise, only becomes a "transfer" for purposes of section 547 when the payment is honored by the creditor's bank. *Barnhill v. Johnson,* 503 U.S. 393, 400, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Similarly, deposits of funds to creditors only become "transfers" for purposes of section 547 when the payment is honored by the receiving bank. *Chambers v. Pickard (In re Wayne),* 237 B.R. 506, 508–09 (Bankr.M.D.Fla.1999) (citing *Barnhill* ).

656, 670 (Bankr.W.D.Mo.2006) ("The language of § 547(b)(4)(B) clearly provides that an insider relationship is to be determined on the date of the challenged transfer."); *Mann v. GTCR Golder Rauner, LLC*, 351 B.R. 708, 714 (D.Ariz.2006) ("[T]o avoid the transfer of the ICG Asset under section 547, the Trustee must show that [transferee] was an insider at the time the ... transfer [took] effect...."); *In re Toy King Distributors, Inc.*, 256 B.R. 1, 98 (Bankr.M.D.Fla.2000) ("The insider relationship is to be determined on the exact date of the transfer."); *Tidwell v. AmSouth Bank (In re Cavalier Homes of Ga., Inc.)*, 102 B.R. 878, 887 (Bankr.M.D.Ga. 1989) ("The language of section 547(b)(4) clearly states that an insider relationship is to be determined on the exact date of the challenged transfer.").

In *Butler*, the defendant was an insider because he owned stock of the debtor. As an insider, he agreed to relinquish his stock in return for payment from the debtor. On the closing date, the defendant relinquished his stock and received a check for his stock. Late that afternoon, the defendant presented the check to the bank. The bank honored the check the next day. The debtor filed its chapter 7 petition six months later. *Butler*, 72 F.3d at 440.

The trustee sued to avoid the payment on grounds that the defendant was subject to the one-year insider preference period, arguing the defendant negotiated the deal to pay himself while he was an insider, so the one-year lookback period applied. The Fourth Circuit disagreed, holding that the date a payment is negotiated, agreed to or

arranged is irrelevant; the only relevant date is the "exact date" of the transfer. *Butler*, 72 F.3d at 441–42.

The Fourth Circuit offered four reasons for its holding. First, the statutory language demands it. Section 547(b)(4)(B) speaks of insiders "at the time of the transfer," and stretching the statute to include persons who lose their insider status "before the time of the transfer" would be inconsistent with the statute's plain language. *Butler*, 72 F.3d at 441. Second, the Supreme Court's *Barnhill* decision set forth a bright-line test for when a payment is made; in the case of transfers by check, the date the check is honored is the transfer date. *Id.* at 442. Third, the Fourth Circuit held that the trustee's approach would unreasonably multiply litigation. The court found, "in many cases it will be difficult, if not impossible, for a court to determine when an insider's influence has ceased to affect the actions of the debtor. In light of the Supreme Court's clear preference for bright-line rules in this area of the law, we are loathe to adopt an interpretation of the bankruptcy code that would blur the line established by 11 U.S.C. § 101(2)(A), 31(E)." *Id.* at 442. Finally, the Fourth Circuit noted that a judicial stretch in this area is unnecessary, as a trustee also has the power to avoid transfers to insiders within one year from the petition date (now two years), so long as the trustee can show, among other things, the transfer was made for less than reasonably equivalent value or the result of actual fraud. *Id.* at 442 n. 10.

In several older decisions, virtually none of them postdating 1992,[2] a number of

2. One district court case from 2002, *In re Consolidated Industries, Corp.*, 292 B.R. 354, 364 (N.D.Ind.2002), cites three "arranged transfer" cases for the proposition that "where a transfer is part of a larger single transaction, the transferee is an insider-and

subject to the one year period-for the entire time it takes to consummate the deal." If left untouched by the Seventh Circuit, *Consolidated Industries* would be the only post–1992 case adopting the arranged transfer approach. The Westlaw history indicates that

bankruptcy courts have adopted the "arranged" approach, holding that the one-year "insider" period applies when an insider arranges for payment but is paid after he resigns. *See, e.g., EECO, Inc. v. Smedes (In re EECO, Inc.)*, 138 B.R. 260, 265 (Bankr.C.D.Cal.1992)("an insider is no longer an insider when the transfer is no longer a function of or as a result of that entity's or person's insider status."); *Jahn v. Econ. Car Leasing (In re Henderson)*, 96 B.R. 820, 824 (Bankr.E.D.Tenn.1989)("insider status must be present at the time of the transfer, or at least at the time the transfer was arranged."); *Chase Manhattan Bank v. Dent (In re Trans Air, Inc.)*, 79 B.R. 947 (Bankr.S.D.Fla.1987) (creditor who is insider at the time transfer is arranged is insider at time of transfer); *DeRosa v. Buildex, Inc. (In re F & S Cent. Mfg. Corp.)*, 53 B.R. 842, 849 (Bankr.E.D.N.Y. 1985); *Roemelmeyer v. Mandel (In re Hostellerie d'Argenteuil, Inc.)*, 42 B.R. 292, 293 (Bankr.S.D.Fla.1984). The cases approving the "arranged transfer" approach turn on the concern that insiders may effectively control debtors even though the insiders nominally relinquish that control.

■ The Court agrees with the "exact date" approach rather than the "arranged transfer" approach. First, the "arranged view" is "inconsistent with the plain meaning of the statute which requires that the Defendants be insiders 'at the time of the transfer.'" *American Eagle Coatings*, 353 B.R. at 670. *See also Butler*, 72 F.3d at 441; *Stanley*, at 8–9; *Dent*, 86 B.R. at 292. Second, the "exact date" approach is consistent with the Supreme Court's *Barnhill* holding, which expresses a preference for bright-line ap-

proaches. *See, e.g., Butler*, 72 F.3d at 442 ("Even if we were tempted to adopt Butler's novel interpretation of the bankruptcy code, the Supreme Court's decision in *Barnhill* renders us powerless to do so...."). Third, courts have recognized that a loose interpretation of "date of the transfer" would open courts up to a wide range of strike suits. *See, e.g., Butler*, 72 F.3d at 442 ("[W]e reject Butler's approach because it would require us to expand the statutory definition of the term 'insider' in a manner that leads to an unduly litigious result."). Fourth, this extension of liability, as *Butler* noted, is entirely unnecessary given a trustee's fraudulent conveyance powers, which now extend to two years prior to the petition date. *Butler*, 72 F.3d at 442 n. 10. Accordingly, in order to state a cause of action, Plaintiff must allege that Defendant was paid "on" the separation date, not "about" the separation date. Plaintiff's failure to make such an allegation in the Complaint warrants dismissal of the Complaint.

Alternatively, Plaintiff argues that despite his concession that Defendant resigned as CEO of the Debtor a day prior to the transfer, discovery could reveal that Defendant was an insider at the time of the Transfer. Plaintiff points out that "[a]s the Senate Report to [section 101(31)] indicates, '[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.'" Plaintiff's bare allegation in paragraph 40 of the Complaint that "[t]he Defendant was an insider of the Debtor at the time the Transfer was made" is a legal conclusion, not a well pled fact. Plaintiff alleges no facts in the Complaint to support a "plausi-

---

the *Consolidated Industries* case was reversed and remanded by the Seventh Circuit on other grounds, though the Seventh Circuit's

opinion is not perfectly clear as to which section 547 claims it reversed. *See Freeland v. Enodis Corp.*, 540 F.3d 721 (7th Cir.2008).

ble" claim that Defendant exercised any control over Debtor at any time after October 5, 2006, the date his resignation took effect. Prior to the *Twombly* decision Plaintiff's complaint may have been sufficient, but in the absence of any specific facts that, if proven, would support a judgment for Plaintiff, Count One of the Complaint must be dismissed. Plaintiff must allege facts, which, if proven, would establish that at the time of the Transfer Defendant wielded sufficient control over Debtor such that he was an insider. Upon the foregoing, it is

**ORDERED:**

1. Defendant's Motion to Dismiss Count One of the Complaint is granted. Count One of the Complaint is dismissed.

2. The entry of this Order is without prejudice to Plaintiff filing an amended complaint that alleges facts, which, if proven, would establish that at the time of the Transfer Defendant wielded sufficient control over Debtor such that he was an insider.